UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------

PARADYSZ INC.,

                          **Plaintiff**

          **v.**

BLACKSTREET CAPITAL HOLDINGS,
LLC, PREMIER CARE, LLC, PREMIER
CARE HOLDINGS, INC., PREMIER
BATHS, INC., JUSTIN COOPER,
LAWRENCE BREGEL, JONATHAN
TIPTON and LAWRENCE S. BERGER, ,
                          **Defendants.**

----------------------------------------------------------

**<u>COMPLAINT</u>**

**16 Civ** _____

       Plaintiff, PARADYSZ INC. ("Paradysz"), by its attorneys, DORF & NELSON LLP, as and for its Complaint against Defendants BLACKSTREET CAPITAL HOLDINGS, LLC ("Blackstreet Capital"), PREMIER CARE, LLC ("Premier Care, LLC"), PREMIER CARE HOLDINGS, INC. ("Premier Care Holdings"), PREMIER BATHS, INC., JUSTIN COOPER, LAWRENCE BREGEL, JONATHAN TIPTON and LAWRENCE S. BERGER hereby alleges the following upon information and belief:

<u>PARTIES</u>

1.  Plaintiff Paradysz ("Plaintiff") is a New York corporation with its principal office located at 5 Hanover Square, New York, New York 10004.  Paradysz is engaged in the business of offering marketing services including audience development, digital marketing and marketing analytics.

2.  Defendant Blackstreet Capital is a Delaware limited liability company with its principal office located at 5425 Wisconsin Avenue, Chevy Chase, Maryland 20815.

3.  Upon information and belief, Blackstreet Capital is a private equity firm.

4.  Upon information and belief, Defendant Premier Care, LLC is a Florida limited liability company with its principal place of business located at 2330A S. Nova Road, South Daytona, Florida 32119.

5.  Defendant Premier Care Holdings is a Delaware corporation.  Upon information and belief, its principal place of business is located in Maryland and/or Florida.

6.  According to the Delaware Secretary of State's website, Premier Care Holdings was incorporated on March 24, 2016.  Upon information and belief, Premier Care Holdings is a special purpose vehicle created by Blackstreet.

7.  Defendant Premier Baths, Inc. is or was a Florida corporation with its principal place of business located at 2330 S. Nova Road, South Daytona, Florida 32119.

8.  Upon information and belief, in or about the end of March/beginning of April 2016, Blackstreet and a special purpose entity created by Blackstreet, Premier Care Holdings, caused Premier Baths, Inc. to transfer all of its assets to an entity called Premier Care, LLC.

9.  Upon information and belief, Premier Care, LLC is presently operating and conducting the same or substantially the same business as the old entity, Premier Baths, Inc.

10. Upon information and belief, the new entity, Premier Care, LLC, is run by some or all of the same executives and employees as Premier Bath, Inc.

11. Defendant Justin Cooper is or was the President of Premier Baths, Inc.   Upon information and belief, he is the North American President and Group CFO for Premier Care, LLC. and resides in Flagler Beach, Florida.

12. Defendant Lawrence Bregel is or was the Vice President of Marketing for Premier Baths, Inc. Upon information and belief, Bregel resides in Orlando, Florida.

13. Defendant Lawrence S. Berger is the Managing Director of Investments for Blackstreet Capital.  Upon information and belief, Berger in Bethesda, Maryland.

14. Defendant Jonathan Tipton is the Vice President of Blackstreet Capital.  Upon information and belief, Tipton resides in, Washington, DC.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and complete diversity of citizenship exists among the parties.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

17. Pursuant to a Master Services Agreement between Paradysz and Premier Baths, Inc. entered into on September 27, 2013 (the "MSA"), the MSA "shall be governed by and interpreted in accordance with the applicable provisions of the laws of the State of New York, without giving effect to the principles of choice or conflicts of laws thereof.  Each of the parties hereto consents and agrees to the exclusive personal jurisdiction of any state or federal court sitting in the State of New York, waives any objection based on venue or forum non conveniens with respect to any action instituted therein, and agrees that any dispute concerning the conduct of any party in connection with this Agreement shall be heard only in the courts described above."

18. This action concerns the conduct of parties to the MSA.  Therefore, it has been agreed that this Court has exclusive personal jurisdiction, that this matter is properly venued here and can be heard in this Court, and that New York law applies.

## FACTUAL BACKGROUND

19. Upon information and belief, Defendant Blackstreet Capital is the owner of Defendant Holdings.  Defendant Holdings claims that it was a lender and secured creditor to a Florida company called Premier Baths, Inc.

20. Premier Baths, Inc. is or was a Florida corporation engaged in the business of manufacturing walk-in tubs, walk-in showers, safe bathing facilities and specialized bathroom designs.

21. On September 27, 2013, Plaintiff Paradysz entered into a Master Services Agreement with Premier Baths, Inc. pursuant to which Paradysz provided online and offline marketing services through its division, PM Digital as requested by Premier Baths, Inc. (the "MSA").

22. Premier Baths, Inc. executed more than 40 Schedules under the MSA.  Pursuant to the Schedules, it received specially tailored online and offline marketing services at its request from Paradysz.  Premier Baths, Inc. was obligated to pay Paradysz for its services pursuant to the terms of each Schedule.

23. In accordance with the MSA and supplemental Schedules, Paradysz provided a full fleet of marketing services to Premier Baths, Inc. These services included marketing research, developing marketing campaign strategies, negotiating and entering into third party media agreements on Premier Baths, Inc.'s behalf, website management services, search engine optimization and social media services, providing strategy and reporting for Premier Baths, Inc.'s participation in various social media channels such as Facebook, Twitter and YouTube, and printing and mail services.

24. These services were provided by Paradysz to Premier Baths, Inc. from September 27, 2013 through April 6, 2016.

25. Over time, Premier Baths, Inc. was unable to meets its payment obligations and it fell behind in its payments to Paradysz.  As a courtesy and in the interest of a partnership, Premier Baths, Inc. and Paradysz entered into a payment plan.  The payment plan was subject to extensive negotiations between the parties, and Premier Baths, Inc. initially met its payment obligations thereunder.  Frequently however, Premier Baths, Inc. was unable to make timely payments due to Paradysz.  Paradysz, however, demonstrated flexibility in allowing Premier Baths, Inc. to manage its payments according to its ability to pay while not disrupting Premier Baths, Inc.'s marketing activities.

26. In or about April of 2015, Premier Baths, Inc. and Paradysz agreed to amend the MSA in writing to define the term of the relationship (the "Amendment").  As set forth therein, Premier agreed to a one year term commencing on February 6, 2015 and that the term "shall automatically renew for additional one (1) year terms unless either party gives written notice to the other of its intention not to renew at least thirty (30) days prior to the expiration of the then current term."  Subsequent Schedules executed by Premier included this automatic renewal term.

27. In or about March of 2016, Premier Baths, Inc. ceased making required payments to Paradysz as they became due.

28. However, Premier Baths, Inc.'s executives, Justin Cooper (President) and Larry Bregel (Vice President of Marketing), assured Paradysz that it would be paid.  They also continuously represented to Paradysz at in-person meetings and in writing in January through April of 2016 that Premier Baths, Inc. would be obtaining the necessary financing to continue to utilize Paradysz's digital marketing services.

29. Specifically, at an in-person meeting on or about January 19, 2016, at The Shores, Daytona Beach Meeting Room, attended by Justin Cooper, Larry Bregel, Scott Mason, Jose Perez, Chris Paradysz, Diana DiGuido, Tim Lippa, Ed Camargo and Jennifer Schulties, Mr. Cooper advised the entire group, including phone attendees, from Paradysz that Premier Baths, Inc. would have new investors in-house by the end of March and thus Premier could continue to pay for the services it was receiving.

30. Another in-person meeting was held on or about March 30, 2016 at Meeting Space in Lake Mary, Florida attended by Diana DiGuido, Jennifer Schulties, Jennifer Twersky, John Iozzia, Tim Lippa, Ed Camargo, Matt Sieracki, Megan O'Connor, Nettie Hackenmueller and Scott Mason and Larry Bregel of Premier Baths, Inc.

31. At the March 30, 2016 meeting, representatives of Paradysz and its PM Digital division laid out a full multi-channel marketing strategy that it had developed specifically for the next stage of Premier Baths, Inc.'s marketing.  Based upon representations from Premier Baths, Inc.'s executives that the business relationship would continue, Paradysz and PM Digital spent weeks preparing the marketing strategy and expended time and labor and incurred costs in connection therewith.  Paradysz also incurred the costs associated with the trip including airfare.  The Paradysz representatives also took the Premier executives to dinner as was customary.

32. Immediately following the March 30, 2016 meeting, Premier Baths, Inc. specifically requested that Paradysz provide additional marketing analysis.  At anyone from  Premier Baths, Inc. give notice or even provide any indication that Premier Baths, Inc. would be going out of business or that it would not be continuing to use Paradysz for ongoing marketing services pursuant to the MSA and supplemental schedules.  To the contrary,

executives from Premier Baths, Inc. including Defendants Cooper and Bregel assured Paradysz that it would honor its payment obligations and would continue to require Paradysz's services going forward.

33. By making these misrepresentations, Premier Baths, Inc. induced Paradysz to continue to provide valuable online and offline marketing services and customized marketing analysis through the first week of April.  Paradysz also continued to expend its own capital to pay third party vendors on Premier Baths, Inc.'s behalf even though it is now clear that Premier Baths, Inc. had no intention of repaying Paradysz for those payments made to third party vendors on its behalf.

34. Paradysz relied on these misrepresentations to its detriment in that it continued to provide services and paying third party media vendors on Premier Baths, Inc.'s behalf through the first week of April.  By that time, Paradysz was owed nearly $2 million in fees.

35. The executives of Premier Baths, Inc., Justin Cooper and Lawrence Bregel, continued to accept and use Paradysz's services even though they knew that Premier Baths, Inc. would be unable and/or unwilling to pay for such services.

36. On or about April 5, 2016, Messrs. Cooper and Bregel suddenly stopped communicating with Paradysz.  That day, the CEO of Paradysz, Chris Paradysz wrote to Messrs. Cooper and Bregel by email and stated that "[n]ow, with the lack of payment and any communication about payment status, we're in a very bad position with $2m owed.  <u>Without communication we can't fend off vendors and keep our own agency and other clients from being cut off.  That's unacceptable.  We've even exposed our own capital, at times, which is included in this $2m.</u>"  (Emphasis in original.)  Mr. Paradysz did not receive any response from Messrs. Cooper or Bregel.

37. Rather, without any notice or explanation to Paradysz, Defendant Blackstreet stepped in and took over Premier's conversations with Paradysz.

38. Specifically, on April 5, 2016, Defendant Tipton sent an email to Mr. Paradysz stating, "Chris, we are quickly getting up to speed on your recent conversations with Justin, Larry and David.  We understand your importance to Premier Care and we would like to set up a call for Thursday morning if that works for your schedule."   In response, Mr. Paradysz responded by email which stated in relevant part that, "[m]ost critical to retaining the current marketing state across channels, and the current order flow, is that we re-establish the steady payments that Premier provided.  Keisha will provide the details, but we cannot wait until Thursday to determine whether to turn off all marketing activity."

39. That same day, Defendant Tipton responded to Mr. Paradysz:

> Chris – We also would like to have a more strategic discussion with you when you're available so please let us know when you're [sic] schedule permits.  In the interim we can jump on the phone with Keisha to walk through the immediate concerns ***as we do not want the marketing channels turned off***.
>
> Keisha – nice to meet you.  Can we set up a call for tomorrow afternoon?  Are you able to send me the invoices/payment history that Chris is referring to below in advance of the call?
>
> Thanks.
> Jonathan

 (Emphasis added.)

40. By his email, Defendant Tipton continued and reaffirmed the representations that the Premier executives had been making to Paradysz, i.e. that Premier would be paying for the services that it continued to receive and that it wanted these services to continue.

41. Astoundingly, the very next day, April 6, 2016, Defendants shut off Paradysz's access to the tool needed to carry out Paradysz's digital marketing services pursuant to the MSA contrary to the representations that the Premier and Blackstreet executives had been making to Paradysz.

42. As of April 6, 2016, the total amount of unpaid fees and third party media charges owed by Premier Baths, Inc. to Paradysz through April 5, 2016 was **$1,577,495.87**.  Of that amount:

   - $1,475,235.71 was from past due receivables under an agreed-upon payment plan;

   - $99,004.66 was the total amount due to Paradysz for services that it provided in March; and

   - $3,255.50 was the estimated amount due for services that Paradysz provided in April until it was denied access to the Premier Baths, Inc. digital marketing tool.

43. It should also be noted that a substantial portion of the $1,577,495.87 total amount due to Paradysz -- $844,719.28 -- are fees that Paradysz paid to third parties media vendors such as Facebook, MediaMath and Doubleclick on behalf of Premier Baths, Inc. and in reliance upon its fulfillment of its payment obligations pursuant to the MSA, the Schedules and the payment plan.

44. Paradysz has learned that at or around the end of March/beginning of April, Blackstreet purportedly took over Premier Baths, Inc. and transferred all of its assets to Premier Care, LLC, herein referred to as the "Transferred Assets."

45.  Upon information and belief, and as is apparent from a letter written by Defendant Cooper and received by Plaintiff's counsel on or about April 20, 2016 (the "Cooper Letter"), the Transferred Assets include all "assets of the business," "funds," and "all of [Premier Care, Inc.] brands and intellectual property" formerly owned by Premier Baths, Inc.

46. Upon information and belief, the Transferred Assets also include goods manufactured by or at the direction of Premier Baths, Inc., inventory and accounts payable that were acquired by Premier Baths, Inc. and held by it before and after March 12, 2015.

47. Defendant Premier Care, LLC is the current holder of all of the Transferred Assets.

48. Upon information and belief, Defendants Blackstreet, Premier Holdings, Premier Care, LLC are now using the Transferred Assets to continue to conduct the business of the former company, Premier Baths, Inc.

49. Defendants Blackstreet and/or Premier Care Holdings including, but not limited to its executives, Defendants Berger and Tipton failed to give Paradysz notice of the impending disposition of collateral even though they expressly knew that Premier Baths, Inc. owed a substantial amount of money to Plaintiff for ongoing marketing services.  In fact, as the email from Defendant Tipton to the CEO of Paradysz on April 5, 2016 makes clear, Defendants knew that Plaintiff Paradysz was providing ongoing marketing services. Defendant Tipton expressly stated that "we do not want marketing channels turned off." The email from Defendant Tipton also makes clear that Defendants knew that Paradysz was owed a substantial amount of money and asked for "invoices/payment history" from Paradysz.

50. Defendants purposefully did not give notice to Plaintiff in advance of the disposition of assets.  Indeed, their attorney advised undersigned counsel that it was a decision "made by the deal people" not to notify Paradysz.

51. By purposefully not giving Plaintiff notice of the purported extrajudicial foreclosure -- and disposing of Premier Baths, Inc.'s collateral by transferring it to Premier Care, LLC without notice to Plaintiff -- Defendants Blackstreet and/or Premier Care Holdings failed to

comply with the notice provision of Section 679.611 of the Florida Uniform Commercial Code (or "UCC").

52. Only after Plaintiff made a formal demand for payment of the nearly $2 million owed to it for services provided and payments made on behalf of Premier Baths, Inc. did the Blackstreet Defendants advise Plaintiff that Defendant Premier Care Holdings purportedly exercised its rights under the terms of loan documents signed by Premier Baths, Inc. Specifically, the Blackstreet Defendants claim to have foreclosed on Premier Baths, Inc.'s assets in an extrajudicial proceeding under the Florida Uniform Commercial Code. They further admit that they transferred all of Premier Baths, Inc.'s assets to its subsidiary, Premier Care, LLC.

53. Paradysz has since learned that Defendant Premier Care Holdings filed a UCC Financing Statement on March 12, 2015 against Premier Baths, Inc., Document No. 20150325382X. Defendant Premier Care Holdings is identified in the Detail Record for the Statement as the "Agent and Security Trustee." However, the actual UCC Financing Statement identifies "The Bank of New York Mellon, London Brach, as Security Trustee." The UCC Financing Statement was filed by an attorney at Clifford Chance LLP. The collateral identified therein is "[a]ll assets of the Debtor." There is no after-acquired clause that would entitle Defendants Blackstreet and Premier Care Holdings to any assets acquired by Premier Baths, Inc. after the date of the UCC filing, March 12, 2015.

54. Therefore, by transferring all of the assets of Premier Baths, Inc. in or about the end of March/beginning of April of 2016 to Premier Care, LLC, the Defendants improperly seized assets acquired after the UCC filing on March 12, 2015. For this additional reason, Defendants acts were in violation of the Florida UCC.

55. Given the aforementioned failure to give notice and seizure of assets in excess of those in which Defendants Blackstreet and Premier Care Holdings had an interest by Defendants, it is likely that discovery may uncover additional violations of the Florida UCC or common law by Defendants that will invalidate the transfer of assets.

56. Defendants, however, are actively seeking to avoid their debt to Plaintiff. For this reason they cut off Plaintiff's access to Premier Baths, Inc.'s marketing tool on April 6, 2016 without notice which was required under the MSA.

57. Defendants have also made misleading statements to Plaintiff about the continuation of business formerly conducted by Premier Baths, Inc. Indeed, although he is the North American President and Group CFO of Premier Care, LLC, Defendant Cooper wrote a letter, received by undersigned counsel on April 20, 2016, stating that a lender "foreclosed on the assets of the business, including all of its brands and intellectual property." He further represents that Premier Baths, Inc. "has ceased operations and terminated its employees as it no longer has any assets. Moreover, the company has no assets or fund to satisfy any of its remaining obligations to the Senior Lenders or the other creditors." Defendant Cooper's letter omitted the fact that Premier Care, LLC was carrying out the same business as Premier Baths, Inc. Indeed, it is using the same website to make sales and market its business, www.premiercarebathing.com.

58. Upon information and belief, Premier Care, LLC, and the former executives, including Cooper, are engaged in the same business as Premier Baths, Inc.

59. Upon information and belief, Premier Care, LLC, and the Premier Care and Blackstreet executives, are continuing to use vendors that providing services to Premier Baths, Inc. including, but not limited to, marketing vendors.

60. For instance, on April 12, 2016, Defendant Tipton wrote to a representative of Microsoft and stated:

> I wanted to reach out to discuss Premier Care.  I work for an investment group that just purchased the assets of Premier Baths, Inc. in a foreclosure process and I wanted to reach out to see if there's a possibility of establishing a new business relationship with you as I understand you had been a good partner to the prior company.
>
> Let me know if you have time to connect today or tomorrow.
>
> Jonathan

61. Defendants, however, chose to improperly terminate the relationship with Plaintiff in an effort to avoid payment of the substantial debt of nearly $2 million to Plaintiff in addition to a termination fee of $270,375.21 under the MSA.  Defendants are also seeking to avoid repaying Plaintiff the $844,719.28 of media costs paid on behalf of Premier Baths, Inc. by Paradysz to third party vendors such as FaceBook, MediaMath, and Doubleclick.  Plaintiff is presently owed a total of $1,847,871.08.

62. Defendants have purposely concealed material and relevant information from Plaintiff and made misrepresentations so that Defendant Premier Care Holdings could transfer all of the Transferred Asset to a new entity, Premier Care, LLC, that is carrying out the same business as the old one. Premier Baths, Inc.  Defendants also violated provisions of the Florida UCC to accomplish this.

63. Upon information and belief, Defendants Premier Care, LLC and Blackstreet, and executives thereof, are now working with a new marketing company hired to replace Plaintiff so that they could avoid their substantial debt to Plaintiff.  Defendants may also be improperly using marketing plans and strategies developed specifically by Paradysz for

Premier Baths, Inc. that were presented to it and which its executives previously requested in March 2016 immediately prior to the Blackstreet takeover.

64. On April 15, 2016, Plaintiff demanded payment of the total of $1,847,871.08 owed to it for services provided and payments made to third parties.  Defendants' response has been that the debt was owed by Premier Baths, Inc. and the new entity, Premier Care, LLC, which is carrying out the same business as Premier Baths, Inc. is not liable for the debt even though it continues to benefit from the services that Plaintiff provided.

**FIRST CAUSE OF ACTION**

**(FOR STATUTORY VIOLATION OF SECTION 679.622 OF THE FLORIDA UNIFORM COMMERCIAL CODE AGAINST DEFENDANTS BLACKSTREET, PREMIER HOLDINGS, PREMIER CARE, LLC AND PREMIER BATHS, INC.)**

65. Plaintiff repeats and realleges the contents of paragraphs 1 through 64 as though fully set forth herein.

66. Section 679.611 of the Florida UCC requires that a repossessing party must give notice to various categories of persons before disposition of collateral.

67. Subsection (3)(b) of Section 679.611 of the Florida UCC provides that to comply with this notice requirement, the repossessing party must notify "[a]ny secondary obligor."  FL UCC § 679.611(3)(a).

68. Subsection (3)(c) of Section 679.611 of the Florida UCC provides that to comply with this notice requirement, the repossessing party must notify "[a]ny [] person from whom the secured party has received, before the notification date, an authenticated notice of claim of interest in the collateral," if the collateral is "other than consumer goods." FL UCC § 679.611(3)(c).

69. At or about the end of March/beginning of April, Defendants Blackstreet and/or Premier Care Holdings transferred all of the assets of Premier Bath, Inc. to Premier Care, LLC (the "Transferred Assets").

70. Upon information and belief, and as is apparent from a letter written by Defendant Cooper on behalf of Premier Baths, Inc. and received by Plaintiff's counsel on or about April 20, 2016 (the "Cooper Letter"), the Transferred Assets include all "assets of the business," "funds," and "all of [Premier Care, Inc.] brands and intellectual property" formerly owned by Premier Baths, Inc.

71. Upon information and belief, the Transferred Assets also include goods manufactured by or at the direction of Premier Baths, Inc., inventory and accounts payable that were acquired by Premier Baths, Inc. and held it before and after March 12, 2015.

72. Defendant Premier Care, LLC is the current holder of all of the Transferred Assets.

73. Upon information and belief, Defendants Blackstreet, Premier Holdings, Premier Care, LLC are now using the Transferred Assets to continue to conduct the business of the former company, Premier Baths, Inc.

74. Defendants Blackstreet and/or Premier Care Holdings failed to comply with the notice provision of Section 679.611 by purposely not giving notice to Plaintiff Paradysz before disposing of Premier Baths, Inc.'s collateral by transferring it to Premier Care, LLC.

75. Defendants Blackstreet and/or Premier Care Holdings including, but not limited to its executives, Defendants Berger and Tipton failed to give Paradysz notice of the impending disposition of collateral even though they expressly knew that Premier Baths, Inc. owed a substantial amount of money to Plaintiff for ongoing marketing services.  In fact, as the email from Defendant Tipton to the CEO of Paradysz on April 5, 2016 makes clear,

Defendants knew that Plaintiff Paradysz was providing ongoing marketing services. Defendant Tipton expressly stated that "we do not want marketing channels turned off." The email from Defendant Tipton also makes clear that Defendants knew that Paradysz was owed a substantial amount of money and asked for "invoices/payment history" from Paradysz.

76. Plaintiff Paradysz was entitled to notice from Defendants Blackstreet, Premier Care Holdings and Premier Baths, Inc. prior to the disposition of all of its collateral to a new entity, Premier Care, LLC pursuant to statutory and common law.

77. Plaintiff Paradysz was entitled to notice pursuant to the Subsection (3)(b) of Section 679.611 of the Florida UCC it is/was a "secondary obligor" of Premier Baths, Inc.  FL UCC § 679.611(3)(a).

78. Additionally, Plaintiff was entitled to notice pursuant to Subsection (3)(c) of Section 679.611 of the Florida UCC because Defendants Blackstreet and Premier Care Holdings were on notice that it had a claim of interest in the collateral of Premier Baths, Inc.  FL UCC § 679.611(3)(c).  As previously stated, this collateral included assets "other than consumer goods" (*id.*)  including, but not limited to, "funds," and "all of [Premier Care, Inc.] brands and intellectual property."  (Cooper Letter.)

79. Furthermore, Defendants failure to give Plaintiff required notice pursuant to statutory and common law renders its disposition of the Transferred Assets from Premier Baths, Inc. to Premier Care, LLC commercially unreasonable.  Accordingly, Defendants also violated Section 679.610 of the Florida UCC which requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable."

80. Defendants purposefully did not give notice to Plaintiff in advance of the disposition of assets.  Indeed, their attorney advised undersigned counsel that it was a decision "made by the deal people," i.e. the Blackstreet executives not to notify Paradysz.  Upon information and belief, Defendants decided not to give Paradysz required notice of the seizure and disposition of assets because they knew that Paradysz was owed a substantial sum of money – nearly two million dollars – for services that it continued to provide to Premier Baths, Inc. and third party vendors that Paradysz paid on behalf of Premier Baths, Inc. The remedies for failing to comply with the Florida UCC provisions are that a court may "order or restrain collection, enforcement or disposition of collateral on appropriate terms and conditions."  FL UCC § 679.625(1).

81. Pursuant to FL UCC §679.625(1), Plaintiff seeks injunctive relief against Defendants Blackstreet, Premier Care Holdings, Premier Care, Inc., Premier Care, LLC in the form of an order restraining Defendants from any further disposition of Transferred Assets.

82. The remedies for failing to comply with the Florida UCC provisions also include monetary damages.  FL UCC § 679.625(2).

83. Pursuant to FL UCC § 679.625(2), Plaintiff seeks monetary damages in an amount no less than Two Million Dollars ($2,000,000.00) from Defendants Blackstreet, Premier Care Holdings, Premier Baths, Inc., Premier Care, LLC.

## SECOND CAUSE OF ACTION

### (FOR STATUTORY VIOLATION OF SECTION 679.610 OF THE FLORIDA UNIFORM COMMERCIAL CODE AGAINST DEFENDANTS BLACKSTREET CAPITAL, PREMIER CARE HOLDINGS, PREMIER CARE, LLC AND PREMIER BATHS, INC.)

84. Plaintiff repeats and realleges the contents of paragraphs 1 through 83 as though fully set forth herein.

85. Section 679.610(1) provides that "[a]fter default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing."

86. Section 679.610(2) of the Florida UCC requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable."

87. Defendants Blackstreet and Premier Holdings disposition of the Transferred Assets from Premier Baths, Inc. to Premier Care, LLC at or around the end of March/beginning of April was commercially unreasonable and therefore constitutes a violation of the Florida UCC and/or common law.

88. The disposition of the Transferred Assets from Premier Baths, Inc. to Premier Care, LLC at or around the end of March/beginning of April was commercially unreasonable because, *inter alia,* Plaintiff was not provided required notice in advance of the disposition of all of the Transferred Assets as set forth in the First Cause of Action.

89. The disposition of the Transferred Assets from Premier Baths, Inc. to Premier Care, LLC at or around the end of March/beginning of April was also commercially unreasonable because, *inter alia*, Defendants Blackstreet and Premier Holdings disposition of the Transferred Assets from Premier Baths, Inc. to Premier Care, LLC transferred assets in excess of those that they had security in.

90. The UCC Financing Statement filed by Defendants Blackstreet and Premier Care Holdings on March 12, 2015 against Premier Baths, Inc., Document No. 20150325382X, only states that the secured party has a security interest in "[a]ll assets of the Debtor."

91. There is no after-acquired clause that would entitle Defendants Blackstreet and Premier Care Holdings to any assets acquired by Premier Baths, Inc. after the date of the UCC filing, March 12, 2015. Therefore, even if Defendants Blackstreet and Premier Care Holdings were entitled to seize the assets of Premier Baths, Inc. pursuant to the UCC Financing Statement (which is denied), they were only entitled to the assets of Premier Baths, Inc. *as of March 12, 2015*.

92. Any assets acquired by Premier Baths, Inc. after March 12, 2015 were improperly seized by Defendants Blackstreet and Premier Care Holdings and wrongfully transferred to Premier Care, LLC. For this additional reason, Defendants Blackstreet and Premier Care Holdings disposition of collateral was commercially unreasonable in violation of the Florida UCC.

93. Upon information and belief, assets acquired by Premier Baths, Inc. after March 12, 2015 may include, but are not limited to, manufactured goods and other inventory, accounts receivable or other funds due and owing to Premier Baths, Inc., any brands or intellectual property developed after that date, machinery, vehicles, office furniture, and other tangible and intangible assets.

94. Given the aforementioned failure to give notice and seizure of assets in excess of those in which Defendants Blackstreet and Premier Care Holdings had an interest, it is likely that discovery may uncover additional violations of the Florida UCC or common law.

95. Upon information and belief, Defendant Premier Care, LLC is the current holder of all of the Transferred Assets including, but not limited to, assets acquired after March 12, 2015.

96. Upon information and belief, Defendants Blackstreet, Premier Holdings, Premier Care, LLC are now improperly using the Transferred Assets to continue to conduct the business of the former company, Premier Baths, Inc.

97. The remedies for failing to comply with the Florida UCC provisions are that a court may "order or restrain collection, enforcement or disposition of collateral on appropriate terms and conditions."  FL UCC § 679.625(1).

98. Pursuant to FL UCC §679.625(1), Plaintiff seeks injunctive relief against Defendants Blackstreet, Premier Care Holdings, Premier Care, Inc., Premier Care, LLC in the form of an order restraining Defendants from any further disposition of Transferred Assets.

99. The remedies for failing to comply with the Florida UCC provisions also include monetary damages.  FL UCC § 679.625(2).

100.    Pursuant to FL UCC § 679.625(2), Plaintiff seeks monetary damages in an amount no less than Two Million Dollars ($2,000,000.00) from Defendants Blackstreet, Premier Care Holdings, Premier Care, Inc., Premier Care, LLC.

## THIRD CAUSE OF ACTION

### (FOR UNJUST ENRICHMENT AGAINST DEFENDANTS BLACKSTREET CAPITAL, PREMIER CARE HOLDINGS PREMIER CARE, LLC, AND PREMIER BATHS, INC.)

101.    Plaintiff repeats and realleges the contents of paragraphs 1 through 100 as though fully set forth herein.

102.    Defendants Blackstreet Capital, Premier Care Holdings, and Premier Care, LLC have been unjustly enriched by the services Plaintiff provided to Premier Baths, Inc. and payments that it made to third party vendors on its behalf.

103.   Specifically, Plaintiff provided specifically tailored marketing services to Premier Baths, Inc. up until Defendants Blackstreet Capital, Premier Care Holdings, and Premier Care, LLC unilaterally shut off Plaintiff's access to Premier Baths, Inc.

104.   Plaintiff also made payments to third party vendors such as Facebook, MediaMath and Doubleclick on behalf of Premier Baths, Inc. from its own capital totaling $844,719.28 for services that those third party vendors provided to Premier Baths, Inc. and may continue to provide to Premier Care, LLC.

105.   Defendants Blackstreet Capital, Premier Care Holdings, and Premier Care, LLC have acknowledged a relationship with Premier Baths, Inc.  Specifically, they have admitted to taking all of the Transferred Assets from Premier Baths, Inc. for the benefit of Premier Care, LLC and continuing the business of Premier Baths, Inc. under the new name of Premier Care, LLC.

106.   Accordingly, Defendants Blackstreet Capital, Premier Care Holdings, and Premier Care, LLC have been unjustly enriched at Plaintiff's expense and it would be against equity and good conscience to permit them to retain the benefits of the services provided by Plaintiff and payments that Plaintiff made to third party vendors which continue to market the company.   For example, there is still a Facebook page as "Premier Care in Bathing" that was developed and paid for by Plaintiff.

107.   Accordingly, Paradysz has been damaged in an amount yet undetermined in excess of the jurisdictional limits of the Court, but no less than Two Million Dollars ($2,000,000.00).

**FOURTH CAUSE OF ACTION**

**(FOR BREACH OF CONTRACT AGAINST PREMIER BATHS, INC.)**

108.    Plaintiff repeats and realleges the contents of paragraphs 1 through 107 as though fully set forth herein.

109.    On September 27, 2013, Plaintiff Paradysz entered into the MSA with Premier Baths, Inc. pursuant to which Paradysz provided online and offline marketing services through its division, PM Digital as requested by Premier Baths, Inc.

110.    The parties agreed that the MSA would be supplemented by agreed-upon, written schedules for specific services to be provided by Paradysz.  Premier Baths, Inc. executed more than 40 Schedules under the MSA.  Pursuant to the Schedules, it received specially tailored online and offline marketing services at its request from Paradysz.  Premier Baths, Inc. was obligated to pay Paradysz for its services pursuant to the terms of each Schedule.

111.    In accordance with the MSA and supplemental Schedules, Paradysz provided a full fleet of marketing services to Premier Baths, Inc. These services included marketing research, developing marketing campaign strategies, negotiating and entering into third party media agreements on Premier Baths, Inc.'s behalf, website management services, search engine optimization and social media services, providing strategy and reporting for Premier Baths, Inc.'s participation in various social media channels such as Facebook, Twitter and YouTube, and printing and mail services.

112.    These services were provided by Paradysz to Premier Baths, Inc. from September 27, 2013 through April 6, 2016.

113.    In or about April of 2015, Premier Baths, Inc. and Paradysz agreed to amend the MSA in writing to define the term of the relationship (the "Amendment").  As set forth therein,

Premier agreed to a one year term commencing on February 6, 2015 and that the term "shall automatically renew for additional one (1) year terms unless either party gives written notice to the other of its intention not to renew at least thirty (30) days prior to the expiration of the then current term." Subsequent Schedules executed by Premier included this automatic renewal term. Therefore, the MSA was automatically renewed on February 6, 2016.

114.   In or about March of 2016, Premier Baths, Inc. ceased making required payments to Paradysz as they became due.

115.   On April 6, 2016, Defendants shut off Paradysz's access to the tool needed to carry out Paradysz's digital marketing services pursuant to the MSA contrary to the representations that the Premier and Blackstreet executives had been making to Paradysz that they wanted Paradysz's marketing services to continue.

116.   Premier Baths, Inc. breached the MSA and Schedules by failing to make payments as they became due.

117.   As of April 6, 2016, the total amount of unpaid fees and third party media charges owed by Premier Baths, Inc. to Paradysz through April 5, 2016 was $1,577,495.87.  Of that amount:

- $1,475,235.71 was from past due receivables under an agreed-upon payment plan;

- $99,004.66 was the total amount due to Paradysz for services that it provided in March;

- $3,255.50 was the estimated amount due for services that Paradysz provided in April until it was denied access to the Premier Baths, Inc. digital marketing tool; and

- $844,719.28 were fees that Paradysz paid to third parties media vendors such as Facebook, MediaMath and Doubleclick on behalf of Premier Baths, Inc.

118.    Premier Baths, Inc. also breached the MSA and Schedules by unilaterally terminating the parties' agreement after it had been renewed for an additional year on February 6, 2016 and without giving Paradysz written notice in advance as was required by the terms of the parties' agreement.    Accordingly, Plaintiff Paradysz is owed a termination fee of $270,375.21 pursuant to the MSA.

119.    Accordingly, Paradysz has been damaged in the amount of $1,847,871.08, plus interest, fees and costs.

**FIFTH CAUSE OF ACTION**

**(FOR FRAUD AGAINST ALL DEFENDANTS)**

120.    Plaintiff repeats and realleges the contents of paragraphs 1 through 119 as though fully set forth herein.

121.    Defendants Blackstreet Capital and Premier Care Holdings, and the executives of those companies, Defendants Lawrence Berger and Jonathan Tipton in coordination with the executives of Premier Baths, Inc. including Cooper and Bregel, transferred all of the Transferred Assets from Premier Baths, Inc. to Premier Care, LLC.

122.    Defendants did so in violation of various Florida UCC statutes so that Plaintiff would not be tipped off to the planned asset transfer.    To accomplish this, Defendant Cooper and Bregel, among others from Premier Baths, Inc., made material misrepresentations and/or omitted material facts to Plaintiff.    Namely, they represented to Plaintiff that Premier Baths, Inc. would continue to honor its obligations under the MSA and use Plaintiff for its marketing services even though they knew that Defendants Blackwell Capital and Defendant Premier Care Holdings were going to undertake an extrajudicial foreclose of all of the assets of Premier Baths, Inc.

24

123.   Upon information and belief Defendants purposely concealed this for several reasons. First, so that Plaintiff could not take action to object or stop the transfer of assets because it was owed nearly $2 million before the foreclosure was completed.  Second, so that Plaintiff would not turn off marketing channels until Defendants had a new marketing company to replace Plaintiff and provide services to the new entity, Premier Care, LLC.  Third, so that Plaintiff would continue to make payments to third party vendors on behalf of Premier Baths, Inc. which continue to market the company.  Fourth, so that Defendants could seize more assets to which it was entitled from Premier Baths, Inc. in violation of the Florida UCC.

124.   Defendants have conceded that they knew about Paradysz in advance of the purported foreclosure but that the "deal people" made a specific determination not to notify Plaintiff even though Plaintiff was entitled to such notice under the Florida UCC.  Upon information and belief, the "deal people" are Defendants Lawrence Berger and Jonathan Tipton.

125.   Defendants representations and omissions to Plaintiff were false and Defendants knew they were false at the time that they were made.

126.   Plaintiff justifiably relied upon the misrepresentations and omissions made by Defendants, particularly those of Defendants Cooper and Bregel at the March 2016 meetings, to continue to provide marketing services to Defendants and pay third parties on its behalf.

127.   Defendant Premier Care, LLC is an alter ego of Premier Baths, Inc.  Upon information and belief, it transacts the same business as Premier Baths, Inc., there is overlap in officers, directors and personnel, and all of the assets previously belonging to Premier Baths, Inc. have been transferred to Premier Care, LLC.  Accordingly, the corporate veil of Premier

Care, LLC should be pierced to achieve equity and compensate Plaintiff for services that it provide and from which Premier Care, LLC continues to benefit from and to repay Plaintiff for payments that Plaintiff made from its own capital to third party vendors for marketing services that Defendants continue to receive.

128.   Accordingly, Paradyaz has been damaged in an amount yet undetermined in excess of the jurisdictional limits of the Court, but no less than Two Million Dollars ($2,000,000.00).

## SIXTH CAUSE OF ACTION

### (FOR AN ACCOUNTING AGAINST DEFENDANTS BLACKSTREET CAPITAL, PREMIER CARE HOLDINGS PREMIER CARE, LLC, AND PREMIER BATHS, INC.)

129.   Plaintiff repeats and realleges the contents of paragraphs 1 through 128 as though fully set forth herein.

130.   Defendants Blackstreet Capital, Premier Care Holdings and Premier Care, LLC improperly transferred all of the assets of Premier Baths, Inc. to Premier Care, LLC.  This act was in violation of the Florida UCC for various reasons including, but not limited to, the fact that all of the assets were transferred without notice to Plaintiff and Defendant seized more assets that it was entitled to.  For these, and potentially other reasons, the transfer was commercially unreasonable.  The transfer was also in violation of common law.

131.   At or around the time of the transfer, Plaintiff was owed $1,577,495.87.

132.   Accordingly, Plaintiff is entitled to an accounting of the value of assets that were transferred from Premier Baths, Inc. to Premier Care, LLC.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants as follows:

a.      On its First Cause of Action for statutory violation of Section 679.622 of the Florida UCC against Defendants Blackstreet Capital, Premier Care Holdings, and Premier Care, LLC, an order granting Plaintiff injunctive relief in the form of restraining any further collection, enforcement or disposition of collateral by Defendants and granting Plaintiff damages in an amount no less than Two Million Dollars ($2,000,000.00) from Defendants Blackstreet Capital, Premier Care Holdings, Premier Care, Inc., Premier Care, LLC;

b.      On its Second Cause of Action for statutory violation of Section 679.610 of the Florida UCC against Defendants Blackstreet Capital, Premier Care Holdings, and Premier Care, LLC, an order granting Plaintiff injunctive relief in the form of restraining any further collection, enforcement or disposition of collateral by Defendants and granting Plaintiff damages in an amount no less than Two Million Dollars ($2,000,000.00) from Defendants Blackstreet Capital, Premier Care Holdings, Premier Care, Inc., Premier Care, LLC;

c.      On its Third Cause of Action for unjust enrichment against Defendants Blackstreet Capital, Premier Care Holdings and Premier Care, LLC, damages in an amount no less than Two Million Dollars ($2,000,000.00);

d.      On its Fourth Cause of Action for breach of contract against Defendant Premier Baths, Inc., damages in an amount no less than $1,847,871.08, plus interest, fees and costs;

e.      On its Fifth Cause of Action for fraud against all Defendants, damages in an amount no less than Two Million Dollars ($2,000,000.00);

f.      On its Sixth Cause of Action for an Accounting, an accounting of all Transferred Assets;

g.      Awarding Plaintiff the costs and disbursements associated with this proceeding, including Attorney's Fees; and

h.      Granting such other and further relief as this Court deems just and proper.

**THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED:      Rye, New York
            May 23, 2016

                                            **DORF & NELSON LLP**

                                            _____
                                            Jon A. Dorf, Esq.
                                            Jonathan B. Nelson, Esq.
                                            Laura-Michelle Horgan, Esq.
                                            Dorf & Nelson LLP
                                            *Attorneys for Plaintiff*
                                            *Paradysz Inc.*
                                            555 Theodore Fremd Ave.
                                            Rye, NY 10580
                                            Tel: (914) 381-7600
                                            Emails: jdorf@dorflaw.com
                                                    jnelson@dorflaw.com
                                                    lhorgan@dorflaw.com